No. 86-445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

DRUG FAIR NORTHWEST,

        Plaintiff and Appellant,

-vs-

HOOPER ENTERPRISES, INC., a
Montana corporation, COLLIER,
HEINZ & ASSOCIATES, and GATEWAY
WEST SHOPPING CENTER ASSOCIATES,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
             In and for the County of Flathead,
             The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Murray, Kaufman, Vidal & Gordon; Daniel W. Hileman,
        Kalispell, Montana

    For Respondent:

        Church, Harris, Johnson & Williams; Don A. LaBar,
        Great Falls, Montana
        Murphy, Robinson, Heckathorn & Phillips; Debra D.
        Parker, Kalispell, Montana

---

Submitted on Briefs: Dec. 11, 1986

Decided: March 6, 1987

Filed: MAR 6 - 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The District Court of the Eleventh Judicial District, Flathead County, concluded that a letter between the parties was not an enforceable lease agreement upon which Drug Fair Northwest (Drug Fair) could bring a contract action. Summary judgment was granted to the defendants. Drug Fair appealed. We affirm.

The issue is whether the District Court erred in granting summary judgment.

In February 1973 Gateway West Shopping Center (then known as Sky River Enterprises and herein called Gateway West) negotiated with tenants for rental spaces in a Kalispell shopping center then being constructed. Drug Fair negotiated with Gateway West for two areas, a large lease for its drug store and a smaller lease for a tires, batteries, and accessories (TBA) store. In mid-February a leasing agent for Gateway West wrote a two paragraph letter to Drug Fair which Drug Fair contends is a lease agreement.

Gateway West and Drug Fair executed a written lease agreement of considerable length for the drug store. It contained various provisions appropriate to a shopping center lease. This lease provided for a 20 year term with two 5 year options for renewal at specified rents. For reasons which do not appear in the record, no similar written lease was executed between the parties covering the TBA area. Commencing in 1973 Drug Fair did occupy the TBA area, and paid rent on a monthly basis which was accepted by Gateway West for a period of approximately 10 years. In 1979 Drug Fair leased the TBA area to Hooper Enterprises, Inc. (Hooper Enterprises). In 1983 the managers of Gateway West notified Drug Fair by letter that it did not have a lease on the TBA area and that a month-to-month lease was in effect. The

2

letter also gave Drug Fair a 30-day notice to vacate the TBA premises. A second notice of termination was sent to Drug Fair in February 1984. Thereafter, Gateway West leased the TBA area directly to Hooper Enterprises.

The District Court concluded that the February 1973 letter was not sufficient to constitute a binding and enforceable lease and that any tenancy by Drug Fair was terminated by the 1983 letter from the manager of Gateway West to Drug Fair. As a result, the District Court granted the summary judgment motions of the defendants and dismissed Drug Fair's suit which was based upon a termination of the lease of the TBA area. Drug Fair appealed.

Did the District Court err in granting summary judgment?

A motion for summary judgment should be granted if there is no genuine issue of a material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. This Court has held that:

> In order to determine whether summary judgment was proper, we review the pleadings, affidavits, answers to interrogatories and admissions on file to establish whether any genuine issues of material fact are presented. If there is no genuine issue as to any material fact, then the moving party is entitled to summary judgment as a matter of law. (Cite omitted.)

Westmont Tractor Company v. Continental I, Inc. (Mont. 1986) ___ P.2d ___, ___, 43 St.Rep. 2380, 2381.

Drug Fair contends there were issues of material fact which were decided by the District Court so that the summary judgment was improper. In substance Drug Fair argues that the District Court erred when it entered findings of fact and conclusions of law based upon a summary judgment motion. Because summary judgment is appropriate only where there are no issues of material fact, normally the making of findings

of fact would indicate improper procedure on the part of the District Court. In the making of its findings of fact in this case, the District Court pointed out that the facts appeared to be undisputed or admitted. In connection with those facts, Drug Fair argues that the facts alleged in its complaint must be accepted as correct. That is not correct. As pointed out in Mayer Brothers v. Daniel Richard Jewelers, Inc. (Mont. 1986), 726 P.2d 815, 43 St.Rep. 1821, a party opposing a motion for summary judgment may not rest upon the mere allegations of pleadings, and has an affirmative duty to respond by affidavits or sworn testimony with specific facts that show there is a genuine issue of fact for trial. We have carefully reviewed the record and conclude that the District Court was correct and that there was not a genuine issue of material fact so that summary judgment was appropriate.

Drug Fair also argues that it had a written, oral, or implied lease agreement with Gateway West. In deposition testimony, the president of Drug Fair testified that the February 1973 letter was the entire basis for its lawsuit. The letter consisted of two paragraphs. The first paragraph pertains to the main drug store lease and is not pertinent. The second paragraph relating to the TBA store provided:

> It is also my understanding the TBA building lease will contain the following basic criteria: 31 ft. by 85 ft. in size, containing 2635 sq. ft. rental to be 70¢ per sq. ft. when being used as a TBA and 84¢ per sq. ft. when not being used for a TBA, an annual rent of $1844.50 or $153.71 per month. Lease to run for 10 yrs. with four 5 year options. This lease agreement to be drawn as a separate document and as soon as possible.

4

The above paragraph set forth several handwritten notations or corrections initialed by the leasing agent for Gateway West and an officer for Drug Fair.

Drug Fair argues that it had a written, oral, or implied lease agreement with Gateway West and that there was a question of fact as to whether the parties intended that the letter be a lease with the result that summary judgment was not appropriate. In its findings of fact, the District Court found that there were a number of terms and conditions required for the TBA lease which were not mentioned in the 1973 letter. These included the commencement date of the lease, and the responsibility of the parties for taxes, insurance, repairs, maintenance and utilities. In addition, and critical to the issue before us, the court found that the 1973 letter did not contain the manner of exercising the four 5 year options described in the letter and the lease price to be paid for each of the 5 year option periods. We agree with the District Court that the essential terms of an option for renewal include not only the manner in which such options for renewal are to be granted, but of critical importance, the exact rental to be paid during each of such option periods. Clearly where there are option periods which total 20 years in length, it is essential that an agreement be reached as to the rent to be paid during each of those periods.

In Riis v. Day (1980), 188 Mont. 253, 613 P.2d 696, we held that as a general rule an agreement must contain all its essential terms in order to be binding. The Riis decision specifically addressed the importance of renewal provisions. In Riis, an action was brought for breach of a renewal provision in a lease. The three views regarding the validity of a renewal provision open to rent negotiation were stated and the "first minority rule" was adopted. This rule states that:

. . . a renewal provision will be enforced if it expressly contemplates a clear and definite mode for determining future rent. Thus, if a definite mode for renewal rent is provided by the lease agreement or by operation of law, which can be determined at the time of renewal without negotiation, the court is not making a new contract for the parties but merely compelling the parties to do what they plainly contemplated in the beginning.

Riis, 613 P.2d at 697-98. The Court adopted this standard because:

[i]t recognizes the business utility of renewal provisions. Such provisions often do provide the inducement for entering the original lease. But, given fluctuating market conditions, the parties cannot fairly determine what would be an adequate rent in the future. At the same time, this standard also adheres to the wisdom of the old rule. It recognizes the danger of courts arbitrarily interpolating provisions into an arm's length transaction to breathe life into an otherwise invalid agreement.

Riis, 613 P.2d at 698.

We conclude that the February 1973 letter between Drug Fair and Gateway West was not sufficient to constitute a lease. The letter fails to set forth material and essential terms necessary for the enforcement of the renewal provisions of a lease. Other than the letter, no evidence of such essential terms was submitted by Drug Fair. We conclude that Drug Fair had only a month-to-month lease on the TBA area.

Accordingly, the summary judgment of the District Court is affirmed.

_____
Justice

We Concur:

6

_____
Chief Justice

_____

_____

_____
Justices